57 F.3d 1144
 313 U.S.App.D.C. 59
 David R. HINSON, Administrator, Federal Aviation
Administration, and Federal Aviation
Administration, Petitioners,
v.
NATIONAL TRANSPORTATION SAFETY BOARD, and Richard A. Rolund,
Respondents.
 No. 94-1428.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 13, 1995.
Decided June 30, 1995.
 
 On Petition for Review of an Order of the National Transportation Safety Board.
 Susan S. Caron, Atty., Federal Aviation Admin. argued the cause for petitioners. With her on the briefs were Kathleen A. Yodice, Acting Manager, Appellate Branch, and Timothy P. Melcher, Atty., Federal Aviation Admin. Robert P. Vente, Counsel, Federal Aviation Admin., and E. Roy Hawkens, Atty., U.S. Dept. of Justice, entered appearances.
 John J. Veth, Speiser, Krause, Madole & Cook, argued the cause for respondent Rolund. With him on the brief were Gerard R. Lear, Rina M. Goodman, Speiser, Krause, Madole & Lear, and John P. Burns, Laguna Niguel, CA.
 Daniel D. Campbell, General Counsel, National Transp. Safety Bd., was on the brief for respondent National Transp. Safety Bd.
 Before: EDWARDS, Chief Judge, WALD and HENDERSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 The Administrator of the Federal Aviation Administration ("FAA") petitions for review of an order by the National Transportation Safety Board ("NTSB" or "Board"), Administrator v. Rolund, NTSB Order No. EA-3991 (Oct. 14, 1993), reconsideration denied, NTSB Order No. EA-4123 (Apr. 8, 1994), reversing a 90-day suspension of Richard A. Rolund's airline transport pilot certificate. Because the FAA failed to raise the principal objections it argues to us before the NTSB, we are barred by 49 U.S.C. Sec. 1153(b)(4) from considering them on a petition for review. Accordingly, since the Board's findings are supported by substantial evidence in the record, the petition for review is denied.I. BACKGROUND
 
 A. Factual Background
 
 2
 On March 16, 1990, pilot Richard Rolund arrived at the Visalia, California airport at approximately 5:40 a.m. to prepare for his scheduled Wings West Airlines Flight # 5184 to Fresno. At approximately 5:45 a.m., Rolund obtained from the American Airlines Saber computer system a weather report for his flight route. The report did not include specific information on current weather conditions at Visalia, although it did include a weather forecast for the area. Rolund did not seek or obtain the official report on current weather conditions at Visalia, but instead relied on the Saber report and his own visual observations.
 
 
 3
 At 5:52 a.m., a certified weather observer at the Visalia airport reported ground visibility at 1 1/2 miles with drifting fog. At 6:18 a.m., a flight departed Visalia under instrument flight rule ("IFR") clearance, required whenever visibility is less than three miles. At 6:20 a.m., Rolund departed Visalia under visual flight rules ("VFR"), a procedure permitted by FAA regulations only when ground visibility is three miles or more. At 6:48 a.m., the certified weather observer at Visalia reported ground visibility at three miles with some fog and haze. Rolund later testified that at the time of the takeoff, based on his own observations, he believed ground visibility exceeded three miles.
 
 
 4
 As Rolund approached Fresno, he made contact with air traffic control, which (as verified by the transcript of the radio transmission) instructed him to remain at or above 2,500 feet as he entered Fresno airspace, and gave additional instructions concerning his approach to the runway. Rolund acknowledged and "read back" part of the instructions, but did not read back the altitude instruction. He descended to 2,100 feet. He testified later that he had not heard that portion of the air traffic control transmission instructing him to remain at or above 2,500 feet.
 
 B. Procedural Background
 
 5
 On April 16, 1991, the Administrator of the FAA suspended Rolund's airline transport pilot certificate for 90 days, finding that Rolund had committed two safety violations during Wings West Flight # 5184 from Visalia to Fresno. First, the Administrator found that Rolund had departed Visalia using VFR when visibility was less than three miles, the minimum required for VFR operations in a "controlled area" under 14 C.F.R. Sec. 91.105(d)(1). Second, the Administrator found that, despite an air traffic control instruction to remain at or above 2,500 feet when entering Fresno airspace, Rolund had descended to 2,100 feet and in so doing violated 14 C.F.R. Sec. 91.75(b) which provides that "[e]xcept in an emergency, no person may, in an area in which air traffic control is exercised, operate an aircraft contrary to an [air traffic control] instruction." 14 C.F.R. Sec. 91.75(b) (1990). On October 16, 1991, after an administrative hearing, an NTSB administrative law judge ("ALJ") affirmed the Administrator's suspension order.
 
 
 6
 Rolund appealed to the Board, which reversed the ALJ and dismissed the complaint. With regard to the VFR takeoff, the Board said that although the official 5:52 a.m. weather report for Visalia provided some evidence of weather conditions at 6:20 a.m., it was not conclusive, and given conflicting testimony concerning actual weather conditions, the FAA had not carried its burden of showing by a preponderance of the evidence that visibility was less than three miles at the time of Rolund's departure. The Board noted that the weather was improving rapidly during this period, and even the official observer acknowledged that conditions had changed "sometime in between" his 5:52 a.m. report and his next observation at 6:48 a.m., when visibility was three miles.
 
 
 7
 The Board also accepted Rolund's explanation that he had not heard that part of the air traffic control instruction directing him to remain at or above 2,500 feet. The Board said it would not hold Rolund to a "strict liability" standard for failure to read back and comply with an instruction he had not heard, and that under the circumstances it would find no violation of Sec. 91.75(b). The Board suggested that, since Rolund had not "read back" that part of the instruction concerning altitude, the "best course would have been for Fresno [air traffic control] ... to have clarified the matter" by repeating the instruction.
 
 
 8
 The FAA petitioned for reconsideration on grounds that the Board's decision was not supported by the weight of evidence, was contrary to the Board's own precedents on both counts, and was inconsistent with sound aviation safety policy. The Board denied reconsideration. The FAA now petitions for review,[1] contending the Board failed to defer to the FAA's reasonable interpretations of its own regulations, as required by law.
 
 II. ANALYSIS
 A. Visibility at Takeoff
 1. Deference to FAA's Interpretations
 
 9
 Under 14 C.F.R. Sec. 91.105(d)(1), a pilot may not take off from a "controlled area" under VFR unless "ground visibility" is at least three miles. Another regulation, 14 C.F.R. Sec. 1.1, defines "ground visibility" as "prevailing horizontal visibility near the earth's surface as reported by the United States National Weather Service or an accredited observer." A third provision states that if ground visibility is unreported, a pilot may rely on her own observations of flight visibility. 14 C.F.R. Sec. 91.105(d)(2).
 
 
 10
 Reading these provisions together, the FAA says the term "ground visibility" as used in Sec. 91.105(d)(1) means "ground visibility" as defined in Sec. 1.1, i.e., visibility "as reported by ... an accredited observer." Furthermore, the FAA argues, the authorization for a pilot to rely on her own observations if ground visibility is unreported carries the negative implication that if ground visibility is officially reported, the pilot must rely on the official report. Consequently, the FAA interprets the regulations to require a pilot to obtain and rely on an official report of ground visibility if it is available, and to make ground visibility "as reported by ... an accredited observer" conclusive in determining whether a VFR take-off is permitted. In this case, the FAA says, ground visibility was indeed reported by an official observer, and since the latest available official report showed ground visibility under three miles, that report conclusively establishes that a VFR take-off was impermissible at the time Rolund departed from Visalia. The FAA contends that the Board's decision to the contrary was based on a "novel interpretation" of FAA regulations, rather than the FAA's reasonable interpretation of its own regulations.
 
 
 11
 The FAA next cites 49 U.S.C. Sec. 44709(d)(3), which provides that "[w]hen conducting a hearing under this subsection, the Board ... is bound by all validly adopted interpretations of laws and regulations the Administrator carries out ... unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law." In this case, the Board did not find the FAA's interpretation arbitrary, capricious, or contrary to law, and therefore by the terms of the statute should have been bound by that interpretation, provided it was "validly adopted."[2]
 
 
 12
 Whatever its merits, the FAA's argument concerning the binding effect of its interpretation of its own regulations was never clearly raised in the proceedings below. The Administrator initially cited Rolund for a violation of Sec. 91.105(d)(1) on the basis of a factual finding that the weather was below minimum for VFR operations at the time of his takeoff from Visalia, relying on the official weather report as the best evidence of ground visibility. The ALJ affirmed, on the same factual basis. At the Board proceeding, the FAA once again relied on the factual grounds for the alleged violation, contending that "a preponderance of reliable, probative, and substantial evidence" supported the ALJ's determination that visibility was below minimum for VFR operations. At no time, however, did the FAA advance the argument that under its interpretation of the regulation, Rolund was obligated to obtain the official weather report, or that the official report was controlling. See Administrator's Reply Brief Before the National Transportation Safety Board, reprinted in Joint Appendix ("J.A.") at 210-14. The Board held, however, that nothing in the regulations required the pilot to obtain the official weather report, and given contradictory record evidence on actual visibility in this case, the FAA had not met its burden of showing that Rolund took off under less than three miles visibility conditions.
 
 
 13
 In its petition for reconsideration, the FAA certainly could have argued that under its interpretation of the regulations the official weather report is conclusive and the pilot is required to obtain and rely on an official report if it is available. Further, it could have argued that the Board had failed to give due deference to the FAA's interpretation. But the FAA failed to advance these arguments, even at this phase, instead arguing only that because the official weather report was the best evidence of ground visibility, the Board's decision was unsupported by the weight of the evidence, contrary to the Board's own precedents, and unsound as a matter of aviation safety policy. See Petition for Reconsideration, J.A. 247-51.
 
 
 14
 We do find it both puzzling and disturbing that in a case where important air traffic safety issues are implicated, the Board apparently did not even inquire into, much less consider itself bound by, the FAA's interpretation of the applicable regulations, in the face of a clear statutory directive to defer to reasonable, validly adopted FAA interpretations. But we find it equally disconcerting that the FAA at no time stepped forward to articulate its own interpretation of the regulations to which it expected deference, even when none was requested.
 
 
 15
 Perhaps the FAA did not make these arguments at the initial Board proceeding because it was seeking affirmance of an ALJ decision entirely consistent with its interpretation of applicable regulations. Arguably, the FAA might not have anticipated any "novel" interpretation of the regulations by the Board invoked to reverse the ALJ's decision. But that excuse went out the door when the Board acted on its own interpretation of the FAA regulations, so that the FAA could have been expected to clearly state its interpretation and raise the deference argument in its petition for reconsideration of the Board's decision. Inexplicably it failed to do so.
 
 
 16
 The applicable judicial review provision directs that "[i]n reviewing an order under this subsection, the court may consider an objection to an order of the Board only if the objection was made in the proceeding conducted by the Board or if there was a reasonable ground for not making the objection in the proceeding." 49 U.S.C. Sec. 1153(b)(4). The FAA does not identify any reasonable ground for not making the objection in the proceedings below. Instead, the FAA argues that it did preserve the objection, in the first instance by implicitly relying on its own interpretation of the regulation initially before the Board, and later in its petition for reconsideration when it argued that the Board's decision was contrary to earlier Board precedents which were themselves consistent with the FAA's interpretation. See Petitioner's Reply Brief at 8-15.
 
 
 17
 This rationalization leaves us cold. The mere fact that before the Board the FAA implicitly relied upon its own interpretation of its own regulations and cited Board precedents consistent with that interpretation falls far short of "making the objection" it raises so prominently here, namely that the Board was bound by statute to defer to the FAA's interpretation. The FAA clearly failed to articulate its own interpretation, much less to explicitly argue for deference below. We must in turn decline to entertain its objections raised now for the first time in a petition for review. See Hughes Air Corp. v. C.A.B., 492 F.2d 567, 569 n. 2 (D.C.Cir.1973) (interpreting predecessor provision to preclude court of appeals from adjudicating claim not raised in administrative proceeding below). That result is squarely commanded by 49 U.S.C. Sec. 1153(b)(4), and conforms as well with established principles of administrative law: in most circumstances a reviewing court should not adjudicate issues not raised in the administrative proceeding below, so that the agency has an opportunity to consider and resolve the objections prior to judicial review, and the reviewing court has the benefit of a full record. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 36-37, 73 S.Ct. 67, 68-69, 97 L.Ed. 54 (1952). Neither happened here.
 
 2. Other Grounds for Review
 
 18
 Leaving deference aside, the FAA argues at length that the Board's decision was contrary to Board precedent, citing, e.g., Administrator v. Schoenbachler, 1 N.T.S.B. 682 (1969) (official weather reports provide a "single, controlling determination of whether an airport is under VFR or IFR conditions," in order to establish uniform compliance with traffic separation and control systems); Administrator v. Howard, NTSB Order No. EA-3157, 1990 WL 339095 (N.T.S.B.) (1990) (official weather report "is deemed controlling over a pilot's assessment of ... visibility conditions"); and Administrator v. Kokkonen, 4 N.S.T.B. 881 (1983) ("ground visibility" as determined by official weather observer "is controlling" in order that "all pilots and controllers have a common understanding" of whether VFR or IFR rules apply). But cf. Administrator v. Gaub, 5 N.T.S.B. 1653 (1986) (although it is evidence of weather conditions, official weather report "is not conclusive" because "[r]eported weather is a measurement of conditions existing at the time of the observation" which "can rapidly deteriorate or improve in a matter of minutes"). Furthermore, in the FAA's view, sound air safety policy requires uniform compliance with objective, ascertainable measures of weather conditions where they are available.
 
 
 19
 Our power to review the Board's decisions on any such grounds is, however, extremely limited. We are not at liberty to affirm or overturn a Board decision merely on the basis of our agreement or disagreement with its policy implications, even when important issues of air traffic safety are at stake. Nor is the Board irrevocably bound to its own precedents,[3] so long as it gives a reasoned explanation for its departure. See Airmark Corp. v. FAA, 758 F.2d 685, 691-92 (D.C.Cir.1985). The FAA does not allege here that the Board's decision was arbitrary and capricious on grounds that its purported departure from precedent was inadequately explained.
 
 
 20
 We may set aside the Board's factual findings only if they are not "supported by substantial evidence." 49 U.S.C. Sec. 44709(f). Here there is substantial evidence in the record below to support the Board's findings.[4] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account whatever in the record fairly detracts from its weight." Lindsay v. National Transp. Safety Bd., 47 F.3d 1209, 1213 (D.C.Cir.1995) (citations and quotations omitted). The Board relied on Rolund's own testimony, corroborated in part by the transmission of another pilot airborne at the time of Rolund's departure, stating that it looked clear around Visalia. The Board also relied on the official weather observer's admission that ground visibility at Visalia had changed "sometime in between" his 5:52 a.m. report and his next report at 6:48 a.m., while Rolund departed at 6:20 a.m., exactly halfway between the two official observations. On the basis of this evidence, a reasonable Board might conclude that the FAA had not shown that ground visibility was less than three miles at the time of Rolund's VFR take-off.
 
 B. Air Traffic Control Instructions
 
 21
 Rolund's defense to the charge that he violated an air traffic control instruction to remain at or above 2,500 feet while descending into Fresno was that he "did not hear" that part of the instruction. The transcript of the radio instruction verifies that the instruction was transmitted.
 
 
 22
 The FAA now argues that it interprets 14 C.F.R. Sec. 91.75(b) to require pilots to "listen, hear, and comply with" air traffic control instructions except in emergencies, and failure to hear is a "defense only when there is some reasonable explanation, such as radio malfunction...." Petitioner's Brief at 18. On this issue too, the FAA argues, the Board failed to give due deference to the FAA's reasonable interpretation of its own regulation.
 
 
 23
 Once again, however, the FAA failed to preserve this objection below. Before the Board, the FAA argued only that finding Rolund not liable for failure to comply with air traffic control instructions would be inconsistent with Board precedent and sound air safety policy. See Administrator's Reply Brief, J.A. 214-17. The Board on the other hand found that there was no reason to doubt Rolund's veracity in saying he did not hear the 2,500 foot altitude instruction. The Board then reasoned that, having not heard the instruction, Rolund should not be held liable on a "strict liability" theory. In its petition for reconsideration, the FAA again argued that the Board had issued a decision contrary to its own precedents, see Petition for Reconsideration, J.A. 251-62, citing, e.g., Administrator v. Friesen and Ashcraft, NTSB Order No. EA-3203, 1990 WL 339164 (N.T.S.B.) (1990) (absent evidence of radio failure or other reasonable explanation, and given evidence that crew received part of air traffic control transmission, it "may be reasonably inferred" that they received or should have received the full instruction), and Administrator v. Hembree, NTSB Order No. EA-2958, 1989 WL 267488 (N.T.S.B.) (1989) (tape recording or transcript of air traffic control transmission acknowledged by pilot "creates a presumption that the message was received"). But cf. Administrator v. Fromuth and Dworak, NTSB Order No. EA-3816, 1993 WL 75479 (N.T.S.B.) (1993) (no violation of Sec. 91.75(b) where pilot misheard instruction and read it back as he understood it, and controller took no action to clarify). The FAA further argued that the Board's decision jeopardizes air traffic safety by making failure to hear for any reason, including inattentiveness, a virtually unrebuttable defense to a charge of failure to comply with air traffic control instructions. Petition for Reconsideration, J.A. 257-58. But nowhere below did the FAA argue, as it does here, that the Board's decision was contrary to a binding FAA interpretation of its own regulations. Compare Petition for Reconsideration, J.A. 251-62 (no mention that Board's decision was contrary to FAA interpretation or that FAA interpretation was binding) with Petitioner's Brief at 11-12, 31-32 (resting argument entirely on Board's failure to accord due deference to FAA interpretations). Once again, we are precluded from reaching the deference question, because the FAA failed to properly object in the proceedings below.
 
 
 24
 The FAA does not question the central factual finding made by the Board, that Rolund did not hear air traffic control's altitude instruction; instead, the FAA disputes the significance of that fact under its own interpretation of the regulations. The Board's finding is, in any event, supported by substantial evidence in the record. Rolund himself testified that he did not hear the altitude instruction. This testimony is buttressed by record evidence showing that although Rolund read back other parts of the instruction he did not read back the altitude portion, and a short time later he expressly told air traffic control that he was "descending to pattern altitude" of 1,800 feet, suggesting that he was unaware of any contrary instruction. From this evidence a reasonable mind might conclude, as the Board did, that Rolund had not heard the altitude instruction. Because the Board's finding is supported by substantial evidence, we must uphold it under 49 U.S.C. Sec. 44709(f).
 
 
 25
 Nor does the FAA argue that the Board's decision was arbitrary and capricious on grounds that the Board failed to adequately explain its alleged departure from precedent.[5] Cf. Airmark, 758 F.2d at 692. While the FAA's brief discusses air safety policy and Board precedent at length, the FAA's only claim that the Board's action was arbitrary and capricious rests on the contention that the Board failed to afford due deference to a reasonable FAA interpretation of its regulation. Because that objection was not raised in the proceedings below, we cannot entertain it here.
 
 III. CONCLUSION
 
 26
 We note that while this case implicates important questions of aviation safety policy, those are issues for expert agencies like the FAA and the NTSB to resolve in the first instance. Our role is not to substitute our policy judgments for those of the agencies to whom policymaking responsibility is delegated by Congress; our power to review their decisions is limited. We emphasize that our denial of the FAA's petition for review rests centrally on the narrow ground that, in this case, the FAA failed to articulate its interpretations of its own regulations in the proceedings below, much less to argue they were entitled to deference from the NTSB. In addition, we conclude that the Board's findings are supported by substantial evidence in the record. Our decision thus does not resolve any questions of regulatory interpretation that the FAA seeks to raise. Indeed, the precedential effect of the Board's decision in the Rolund case may ultimately prove quite limited if in some future case the FAA properly raises the argument that its interpretations of its own regulations are entitled to deference, for the Board would then be required to defer to the FAA's interpretations so long as they are "validly adopted" and not "arbitrary, capricious, or otherwise not according to law."
 
 
 27
 The only discernible effect of today's decision, then, is to affirm the Board's decision not to suspend Richard Rolund's license. In that regard, we note that we are merely affirming the status quo, and not causing an unqualified aviator to be returned to the air. Rolund has been eligible to fly during the pendency of these proceedings. His administrative appeal stayed enforcement of the FAA's 90-day suspension order, the FAA elected not to invoke emergency provisions that would have kept him from flying pending the outcome of the proceedings below, and the Board's decision resolved in his favor all charges that he had violated air traffic safety regulations.
 
 
 28
 For the foregoing reasons, the petition for review is denied.
 
 
 29
 It is so ordered.
 
 
 
 [1]
 Although this case is styled Administrator, Federal Aviation Administration v. National Transportation Safety Board, the real parties in interest are the FAA and Richard Rolund. Under the split-enforcement regime employed here, the FAA has regulatory and enforcement authority, while the NTSB acts as an impartial adjudicator. In another split-enforcement context, we noted that the adjudicatory function is roughly analogous to that of a district court; because the adjudicator has no direct stake in the outcome, it is not a proper party to a petition for review challenging its order. Oil, Chemical & Atomic Workers Int'l Union v. OSHRC, 671 F.2d 643, 652 (D.C.Cir.) (per curiam) (OSHRC as adjudicator in split-enforcement scheme is not a proper party to a petition for review of its order), cert. denied, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982). See also Skidmore v. Consolidated Rail Corp., 619 F.2d 157, 159 (2d Cir.1979) (National Rail Adjustment Board "functions solely as an impartial adjudicatory tribunal" without regulatory or enforcement authority, and is not a proper party to a petition for review of its order), cert. denied, 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 488 (1980). It is, of course, for Congress to decide the proper division of regulatory, enforcement, and adjudicatory functions between agencies in a split-enforcement regime. Martin v. OSHRC, 499 U.S. 144, 158, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991). Here, the statute authorizes only "person[s] substantially affected by an order of the Board" and "the Administrator" to initiate judicial review proceedings, 49 U.S.C. Sec. 44709(f), and automatically makes the Administrator a respondent when another party petitions for review. Id. The statute thus does not appear to contemplate any role for the Board as a party in judicial review proceedings. In the present case, we think the Board's role is purely adjudicatory, and there is sufficient adversity between the real parties in interest to ensure proper litigation of all the issues. Cf. McCord v. Benefits Review Board, 514 F.2d 198, 200 (D.C.Cir.1975) (per curiam). We therefore conclude that the Board is not a proper party to this petition for review, and grant the FAA's motion to strike the brief filed by the Board
 
 
 [2]
 The FAA also argues that Martin v. OSHRC, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), requires the NTSB to defer to the FAA's interpretations. Although the result in Martin appears to point in the same direction as the statutory provision applicable here, we think the FAA's reliance on Martin is misplaced. In that case, the Supreme Court held that courts must defer to OSHA's reasonable interpretations, rather than those of the OSHRC which performs an adjudicative function in a split-enforcement regime similar to the one involved here. But the Martin Court expressly limited its holding to the OSHA-OSHRC context, basing its decision on "the available indicia of legislative intent" in the OSH Act, and "tak[ing] no position on the division of enforcement and interpretive powers within other regulatory schemes that conform to the split-enforcement structure." Id. at 157-58, 111 S.Ct. at 1179. Indeed, the Martin Court noted that "[s]ubject only to constitutional limits, Congress is free ... to divide these powers as it chooses...." Id. at 158, 111 S.Ct. at 1179. Although an analogy to the OSH Act as construed in Martin might carry some weight if a clear indication of congressional intent were otherwise lacking, in this case Congress has clearly spoken in 49 U.S.C. Sec. 44709(d)(3), which unambiguously directs the NTSB to defer to the FAA's interpretations of its own regulations. That statute, rather than the Martin analogy, determines that the NTSB owes deference to the FAA
 
 
 [3]
 For its part, the Board maintains that its decision was consistent with its own precedents. See Order Denying Reconsideration, NTSB Order No. EA-4123 (April 8, 1994)
 
 
 [4]
 For purposes of this analysis, we of course cannot consider the FAA's contention, not raised below, that under its interpretation of the regulations official weather reports must be deemed conclusive evidence of actual weather conditions
 
 
 [5]
 On this issue, too, the Board insists that its decision is consistent with its own precedent. See Order Denying Reconsideration, NTSB Order No. EA-4123 (April 8, 1994)